IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE FERENCHICK,<br>　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| BUSINESS WIRE, INC.<br>　　　　　Defendant. | NO.  23-4800 |

MEMORANDUM

HODGE, J.                                                                                                      December 16, 2024

I.    INTRODUCTION

Before the Court is Defendant Business Wire, Inc.'s ("Defendant" or "Business Wire" or the "Company") Motion to Compel Arbitration and Dismiss the Amended Complaint and for Attorneys' Fees and Costs or, in the Alternative, to Dismiss Plaintiff's PFPO Claim at Count IV of the Amended Complaint and Memorandum, Exhibits, and Proposed Order in support thereof (together, the "Motion"). (ECF No. 15.) Plaintiff Lawrence Ferenchick ("Plaintiff" or "Ferenchick") opposed the Motion (ECF No. 16), Business Wire filed a reply in further support of the Motion (ECF No. 17), and Ferenchick filed a sur-reply in opposition to the Motion (ECF No. 23). For the reasons that follow, the Court denies Business Wire's Motion. Business Wire's request for attorneys' fees and costs is also denied.

II.    BACKGROUND[1]

Ferenchick was employed by Business Wire for about four and a half years – from April 2018 until his termination in November 2022. (ECF No. 4 at ¶¶ 14, 49.) About four years into his employment, Business Wire instructed Ferenchick to sign a document entitled "At-Will

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Employment, Confidential Information, Invention Assignment, and Arbitration Agreement" (the "Agreement"), which he did on or about May 27, 2022. (ECF No. 15-1 at 23–34.) At the time of his termination, Ferenchick held the position of Business Development Account Manager. (ECF No. 4 at ¶ 16.) Ferenchick filed suit against Business Wire on December 5, 2023 alleging that he was discriminated against based on his age and actual and/or perceived disability and/or record of impairment, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 1201, *et seq.* ("ADA"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623, *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, as amended, 42 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO"). (*See generally* ECF No. 4.) The terms of the Agreement require that Ferenchick arbitrate claims arising from or pertaining to his employment or the termination of his employment, including any claims pursuant to the ADA or ADEA:

> In consideration of my employment with the company . . . I agree that any and all controversies, claims, or disputes with anyone . . . arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company . . . shall be subject to binding arbitration . . . . Disputes which I agree to arbitration, and thereby waive any right to a trial by jury, include any statutory claims under state or federal law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, **the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967** . . . claims of harassment, discrimination and wrongful termination and any statutory claims.

(ECF No. 15-1 at 28) (emphasis added).)

Business Wire argues that Ferenchick must be compelled to arbitrate his claims because a valid enforceable arbitration agreement exists, Ferenchick's claims are covered by the Agreement, and federal law compels the enforcement of the Agreement. (*See generally* ECF No. 15-1.) Business Wire further argues that it is entitled to its attorneys' fees and costs and that Ferenchick's PFPO claim must be dismissed if this matter is not compelled to arbitration. (*Id.*)

Ferenchick asserts that Business Wire's Motion should be denied because the Agreement is against public policy and because it is unconscionable. (ECF No. 16.) Ferenchick further argues that Business Wire is not entitled to its attorneys' costs and fees and its PFPO claim should not be dismissed. (*Id.*) Lastly, Ferenchick requests a stay in the event the Court grants Business Wire's Motion. (*Id.*)

### III.   LEGAL STANDARD

In assessing whether there is an enforceable arbitration agreement, courts must affirmatively answer two questions: (1) whether the parties entered into a valid arbitration agreement and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009) (internal citations omitted). Further, it is undisputed that there is a "liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25 (1991) (internal quotations omitted), and as such, "[t]here is a strong presumption in favor of arbitrability." *Richards v. Am. Acad. Health Sys., LLC.*, No. 20-00059, 2020 WL 2615688, at *8 (E.D. Pa. May 22, 2020) (internal quotations omitted).

Federal courts apply applicable state contract law to determine whether a valid arbitration agreement exists. *See James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (internal quotations omitted); *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017). Here, the Arbitration Agreement provides that California law should govern any disputes arising from Ferenchick's employment with Business Wire or the termination of his employment. (ECF No. 15-1 at 29.)

## IV. DISCUSSION

### A. Unconscionability of the Agreement

Ferenchick asserts that Business Wire's Motion should be denied because the Agreement "is unconscionable and, therefore, invalid and unenforceable." (ECF No. 16 at 13.) "Both procedural and substantive unconscionability must be present before a contract or term will be deemed unconscionable." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 178 (2015). *See also Quillion v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) ("To prove unconscionability, a party must show that the contract is both substantively and procedurally conscionable."). In other words, "unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 277 (3d Cir. 2004). "[A] sliding-scale approach may be employed so that where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required" and "vice-versa." *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 541 (E.D. Pa. 2018) (internal quotations omitted); *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1093 (2021) ("California courts employ a sliding scale to determine unconscionability, the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude the terms are unenforceable, and vice versa"). Ultimately, "[a] party who has agreed to arbitrate disputes may nevertheless go to court if [he] demonstrates that [he] cannot vindicate [his] statutory rights in arbitration." *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 537 (D.N.J. 2013) (*citing Gilmer*, 500 U.S. at 28).

1. **Procedural Unconscionability**

Ferenchick argues that the Agreement is procedurally unconscionable because it was presented to him as a condition of his continued employment at Business Wire and is therefore a contract of adhesion. (ECF No. 16 at 15–16.) Contracts of adhesion are contracts that are "prepared by a party with excessive bargaining power and presented to the other party on a 'take it or leave it' basis." *Hopkins v. New Day Fin.*, 643 F. Supp. 2d 704, 717 (E.D. Pa. 2009) (internal citation omitted). The Third Circuit has held that contracts of adhesion are generally procedurally unconscionable. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003), ("[t]his element is generally satisfied if the agreement constitutes a contract of adhesion"). Ferenchick asserts that his position is supported by the text of the Agreement, which states: "**as a condition of my employment with Business Wire**[,] its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the [Agreement]." (ECF No. 15-1 at 23 (emphasis added).)

Business Wire does not dispute that the Agreement was presented to Ferenchick as a condition of his continued employment there – instead it argues that not all contracts presented in a take-it-or-leave-it scenario are procedurally unconscionable. (ECF No. 17 at 7–10.) Business Wire relies on *Carroll v. Belmont Park Entertainment LLC* in support of its argument that adhesion contracts are not per se unconscionable. (ECF No. 17 at 9.) In *Carroll*, the Southern District of California held that "[i]n the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive

unconscionability is high." (ECF No. 17 at 9 (quoting *Carroll v. Belmont Park Entm't LLC*, 2021 WL 134102, at *4 (S.D. Cal. Jan. 13, 2021) (internal citations and quotations omitted).)

As an initial matter, the Court finds that the Agreement is a contract of adhesion. The Agreement was presented to Ferenchick as a condition of his continued employment – a fact that is not disputed by Business Wire. (ECF No. 15-1 at 23) ("As a condition of my employment with Business Wire[,] its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the [Agreement]").) The Court also finds that Business Wire's requirement that Ferenchick sign the Agreement *after* four years of employment constitutes an "indication of oppression or surprise" due to the atypical timing of the request. Business Wire seeks to paint the requirement that Ferenchick assent to the Agreement as typical of every arbitration agreement between an employee and employer. (ECF No. 17 at 7.) While it may be common for employers to condition employment on an employee's consent to an arbitration agreement, such agreements are typically presented at the time of hiring or early in an employee's tenure. In this case, the Agreement was not presented to Ferenchick as a condition of his employment, nor was it presented early in his tenure with the Company.[2] The Court finds that together with the "take it or leave it" nature of the Agreement, the unusual time at which the Agreement was presented is sufficient for Ferenchick to establish that there are indicators of "oppression or surprise" present here and therefore the Agreement is procedurally unconscionable.

---

[2] Ferenchick began his employment with Business Wire on April 16, 2018, and the Agreement was signed by both parties in May 2022. (ECF No. 15-1 at 7, 30). Moreover, the Court notes that the Agreement was signed six (6) months before Ferenchick's termination from the Company.

### 2. Substantive Unconscionability

Substantive unconscionability looks to whether the arbitration provision "unreasonably favors the party asserting it." *Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 119 (Pa. 2007); *Fisher*, 66 Cal. App. 5th at 1104 ("Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results") (internal citation omitted). "[A]rbitration provisions that confer an 'unfair advantage' upon the party with greater bargaining power are substantively unconscionable." *Nino v. Jewelry Exch.*, 609 F.3d 191, 204 (3d Cir. 2010) (internal citation omitted); *Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 634 (2015) ("Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results.") (internal citations omitted). Ferenchick argues that the Agreement is substantively unconscionable because it requires him to pay for Business Wire's attorneys' fees and costs if he is not the prevailing party, requires him to pay half the arbitrators' compensation regardless of the outcome, and requires him to travel to San Francisco . (ECF No. 16 at 17.) Therefore, a loss at arbitration could result in significant financial losses – a risk that he would not face in Court. (ECF No. 16 at 17.)

While Ferenchick points to instances in which courts have held that such "loser pays" provisions are substantively unconscionable, Business Wire counters that courts have also found such provisions to be enforceable. *Compare Lim v. TForce Logistics LLC*, 8 F.4th 992, 1002 (9th Cir. 2021) ("substantive unconscionability exists when a fee-shifting clause creates for employees a greater financial risk in arbitrating claims than they would face if they were to litigate those same claims in federal court"), *and Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp. 3d at 1188 (holding a "loser pays" provision substantively unconscionable because

it "undermines the balance of the risk of fee shifting prescribed by statute and can have a substantial chilling effect on plaintiffs seeking to vindicate their rights), *with Goodman v. ESPE America, Inc.*, No. 00-862, 2001 WL 64749, at *4 (E.D. Pa. Jan. 19, 2001) (considering a "loser pays" clause of an agreement to arbitrate and finding that such provision was enforceable and did not deny plaintiff an effective and accessible forum), *and Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 16 (1st Cir. 1999) (refusing to invalidate arbitration agreement with fee-splitting provision because fees had not yet been levied, judicial review was available; and arbitration is often more affordable than litigation for plaintiffs).

Ferenchick claims that paying Business Wire's attorneys' fees (along with other fees and costs), which he believes could be hundreds of thousands of dollars, would cause him a severe financial hardship. (ECF No. 16 at 7.)[3] Business Wire does not dispute Ferenchick's estimate of the cost of attorneys' fees, but instead rests on its argument that "the fact that arbitration may be expensive is insufficient to establish substantive unconscionability." (ECF No. 17 at 11.) The Court finds that the costs associated with Ferenchick pursuing his claim in arbitration are prohibitive and therefore are substantively unconscionable. *See, e.g. Parker v. Briad Wenco, LLC*, 2019 WL 2521537, at *4 (E.D. Pa. May 14, 2019) (determining that the "costs associated with pursuing [plaintiff's] claim in the arbital forum are prohibitive and substantively unconscionable.")

The Court finds that the Agreement is both procedurally and substantively unconscionable and therefore Business Wire's Motion to Compel Arbitration is denied. Because the Agreement is void as unconscionable, the Court need not reach Ferenchick's argument that the Agreement is also void as against public policy.

---

[3] Ferenchick's salary at Business Wire was $120,000 and his expected annual commissions were between $40,000 and $70,000. (ECF No. 16-3 at ¶¶ 1, 2.)

B.     Ferenchick's Philadelphia Fair Practices Ordinance ("PFPO") Claim

Business Wire asserts that in the event the Court does not compel arbitration, Ferenchick's PFPO claim must be dismissed. (ECF No. 15-1 at 18–20.) First, Business Wire argues that Ferenchick failed to exhaust his administrative remedies as he filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") but not the Philadelphia Commission on Human Relations ("PCHR"). (*Id.*) Business Wire relies primarily upon a singular case from this Court in support of its argument that the PFPO requires potential plaintiffs "to file a complaint with the Philadelphia Commission on Human Relations before filing a lawsuit." (ECF No. 15-1 at 19 (citing *Lee v. Bay, LLC*, No. 21-05088, 2023 WL1971209, at *3–5 (E.D. Pa. Feb. 13, 2024).) As Ferenchick notes in his opposition, the plain text of the PFPO does not include an administrative exhaustion requirement. (ECF No. 16 at 22 (citing *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 667–68 (E.D. Pa. 2016).) Moreover, the PFPO prohibits the PCHR from accepting a complaint of discrimination from anyone who has filed a complaint with the PHRC with respect to the same grievance pursuant to Phila. Code. § 9-1112(4), which the Court has identified as a way of "divvying up the procedural workload of investigating discrimination claims between the PHRC and the [PCHR]—i.e., a pragmatic measure to prevent dual and redundant proceedings between the two agencies." *Higgins v. MetLife Inc.*, 687 F. Supp. 3d 644, 655 (E.D. Pa. 2023 (citing *Vandegrift v. City of Phila.*, 228 F. Supp. 3d 464, 482 (E.D. Pa. 2017)) ("City Council likely prohibited the [PCHR] from accepting complaints filed with [PHRC] to preserve administrative resources."). Consistent with the majority opinion of this Court, the Court finds that Ferenchick can proceed with his PFPO claim despite not having administratively filed a complaint of discrimination with the PCHR. *See, e.g. Truesdale v. Albert Einstein Healthcase Network*, No. 22-1597, 2024 WL 329931, at *7 (E.D. Pa. Jan. 29, 2024).

Business Wire also seeks dismissal of Ferenchick's PFPO claim on the basis that it is barred by his state law claim. (ECF No. 15-1 at 18–20.) In support of this argument, Business Wire relies upon the PFPO provision stating that the PCHR "shall not accept a complaint from any person who has filed a complaint with the [PHRC] with respect to the same grievance." (*Id.* (citing Phila. Code. §9-1112(4)).) The Court agrees with Ferenchick that Business Wire's flawed reasoning as to its administrative exhaustion argument applies to its preclusion argument as well. (ECF No. 16 at 25.) The Court finds, consistent with the majority opinion of this Court, as well as the plain language of the PFPO, that nothing in the PFPO limits the right of an injured person to recover damages under any other applicable law or legal theory. *Higgins*, 687 F. Supp. 3d 644, 654 (citing Phila. Code. § 9-1122(4)). Business Wire's Motion is therefore denied and Ferenchick may proceed with his PFPO claim.

## V.     CONCLUSION

For the foregoing reasons, Defendant Business Wire's Motion to Compel Arbitration and Stay This Action and its Motion in the Alternative to Dismiss Count IV of the Amended Complaint are denied. Business Wire's request for attorneys' fees and costs is also denied. An appropriate order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
_____
HODGE, KELLEY B., J.